Of Counsel:

BAYS LUNG ROSE & HOLMA

RYAN H. ENGLE          7590-0
Attorney at Law
A Law Corporation
SARAH M. LOVE          8582-0
Attorney at Law
A Law Corporation
JASON W. JUTZ          10659-0
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, HI  96813
Telephone:  (808) 523-9000
Facsimile:  (808) 533-4184
E-mail: rengle@legalhawaii.com
        slove@legalhawaii.com
        jjutz@legalhawaii.com

Attorneys for Plaintiff
GENTRY HOMES, LTD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GENTRY HOMES, LTD., | CIVIL NO. _____ |
|           Plaintiff, | (Construction Defects) |
|    vs. | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| SIMPSON STRONG-TIE CO., INC. AND SIMPSON MANUFACTURING CO., INC.; JOHN DOES 1-20, | |
|           Defendants. | |

## COMPLAINT

Plaintiff Gentry Homes, Ltd., by and through its attorneys, Bays Lung Rose & Holma, hereby asserts this Complaint against Defendants Simpson Strong-Tie Co., Inc. and Simpson Manufacturing Co., Inc. and alleges and avers as follows:

## PARTIES

1.     At all relevant times herein, Plaintiff Gentry Homes, Ltd. ("Gentry") was and is a Hawaii corporation with its principal place of business located in the City and County of Honolulu, State of Hawaii.

2.     At all relevant times herein, Defendant Simpson Strong-Tie Co., Inc. was and is a California corporation, registered to do business and doing business in the State of Hawaii.  Simpson Strong-Tie Co., Inc. is a subsidiary of Simpson Manufacturing Co., Inc., a Delaware corporation (Simpson Strong-Tie Co., Inc. and Simpson Manufacturing Co., Inc. are hereinafter collectively referred to as "Simpson").

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that, at the time this action is being commenced, there is complete diversity of citizenship between Gentry and Simpson and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue properly lies in this Court under 28 U.S.C. § 1391(b), because the events or omission giving rise to Gentry's claims occurred within this District and because a substantial part of the property that is the subject of this action is situated in this district.

## NATURE OF THE CASE

5.     This case arises out of Simpson's design, engineering, manufacture, marketing, and distribution of certain hurricane strap components that were installed in 2,136 homes developed by Gentry in the Ewa Beach community on the island of Oahu. Unbeknownst to Gentry, Simpson designed, engineered, manufactured, marketed, and distributed hurricane strap components that were defective, prone to premature corrosion, and would compromise the structural integrity of Gentry homes.

## FACTUAL ALLEGATIONS

6.     Gentry is the developer of Ewa by Gentry, a residential housing development in Ewa Beach, on the island of Oahu. Gentry has built and sold approximately 7,000 homes, covering roughly 53 communities within Ewa by Gentry.

7.     Between July 2001 and mid-2012, Gentry constructed 2,136 homes ("Subject Homes"). These homes were constructed across 18 communities in Ewa by Gentry. They consist of 947 single-family residences, 1,179 detached

condominium units, and 10 multi-family residences. There are 100 different model types.

8. All of these homes were engineered to comply with the wind load design requirements under the applicable City & County of Honolulu Building Code. The City & County Department of Planning and Permitting approved the plans for each model type.

9. Each of the Subject Homes was constructed with Simpson hold-down straps ("HD Straps") and mudsill-anchors ("MAS").

10. Throughout the Subject Period, Simpson designed, engineered, manufactured, marketed, promoted, sold, and distributed the HD Straps and MAS for the purpose of being installed and incorporated into construction projects to prevent injury and damage to persons and/or property from wind uplift forces and to comply with the requirements of building codes.

11. These HD Straps and MAS were designed, engineered, manufactured, marketed, promoted, and sold to be placed at uniform intervals around the outermost edge of the concrete slab foundation for each building.

12. Pursuant to Simpson's installation instructions, HD Straps are partially embedded inside the concrete slab of a foundation with an exposed length attached to wall studs. MAS are partially embedded inside the concrete slab of a foundation with an exposed portion wrapped around a sill plate. Both the HD

Straps and MAS are designed in such a way as to prevent the hardware from obtaining protective uniform concrete cover.

13.　　HD Straps and MAS are designed, engineered, manufactured, marketed, promoted, and sold to provide for a continuous load path of a subject building.

14.　　In each Simpson catalogue, Simpson made the following warranty:

> Simpson Strong-Tie Company Inc. warrants catalogue products to be free from defects in material or manufacturing. Simpson Strong-Tie Company, Inc. products are further warranted for adequacy of design when used in accordance with design limits in this catalogue and when properly specified, installed and maintained … Simpson Strong-Tie connectors are designed to enable structures to resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds.

15.　　In reliance on warranties and representations from Simpson about the suitability of the HD Straps and MAS for the foregoing purposes, and in accordance with Simpson's installation instructions, Gentry installed the HD Straps and MAS in all of the Subject Homes.

16.　　Notwithstanding the warranties and representations made by Simpson concerning the suitability of the HD Straps and MAS, Simpson knew or reasonably should have known that its products were defective, prone to premature corrosion, and would compromise the structural integrity of Gentry homes.

17.    In 2003, Simpson circulated an internal memorandum marked "IN-HOUSE USE ONLY!! DO NOT DISTRIBUTE!!" concerning "status of tests and tasks requested by CIA to Simpson Strong Tie, Co. Corrosion of steel embedded in concrete foundations" (the "2003 Memo").

18.    The 2003 Memo memorialized a February 20, 2003 presentation by Simpson's own corrosion engineer in which the engineer noted that chloride and oxygen were attacking Simpson products embedded in the perimeters of concrete foundations. Simpson's engineer recommended that, to protect against such corrosion, installers increase concrete cover over the products, increase the density of the concrete in which the products were embedded, or increase the coating over the concrete.

19.    Neither Simpson's awareness of the corrosion, nor its engineer's recommendations as to ways to mitigate the corrosion, were ever disclosed to Gentry.

20.    In April 2005, Simpson became aware that Simpson HD Straps and MAS were rapidly corroding at the neighboring Ocean Pointe development. As noted in an April 26, 2005 email from Simpson's Senior Territory Manager for Hawaii to Simpson executives, HD Straps were "rusting through the concrete."

21.    On July 28, 2006 Simpson conducted a workshop for Hawaii developers and contractors, including Gentry. Simpson provided a PowerPoint

presentation that informed attendees that problems with Simpson products resulted from mis-installations, and failed to disclose Simpson's knowledge of design defects in its HD Straps and MAS.

22.    On April 14, 2007 Simpson's Senior Territory Manager informed his superiors that a home in Mililani was experiencing significant corrosion of its HD Straps. Based on the ongoing corrosion at Ocean Pointe and this new information, the Senior Territory Manager recommended to his superiors that "we might want to change the way we anchor our homes in Hawaii."

23.    Notwithstanding the foregoing recommendation and the ongoing spread of corrosion throughout the Ocean Pointe subdivision, Simpson failed to inform Gentry of these problems, make recommendations to prevent similar corrosion in the Subject Homes, or advise Gentry to change the way it was anchoring its homes with HD Straps and MAS.

24.    On June 10 and 11, 2008 Simpson's Senior Territory Manager exchanged multiple emails with his superiors about an analysis to determine whether the concrete mix at Ocean Pointe had contributed to the extensive and ongoing corrosion.

25.    Simpson never disclosed to Gentry that, for at least five years, Simpson had been analyzing the impact of concrete cover and composition on corrosion of its HD Straps and MAS, or that it believed, as confirmed in the 2003

Memo, that changes to concrete cover or composition could prevent such corrosion.

26.     Throughout the period from 2003 through 2011, Simpson's Territory Manager conducted regular inspections of Gentry's construction of the Subject Homes, and Gentry's installation of the HD Straps and MAS. Simpson represented to Gentry and assured Gentry that Gentry's installation was the "best in the industry," that the HD Straps and MAS were properly specified, installed, and maintained, and never informed Gentry that its HD Straps and MAS were defective, or that Gentry should consider mitigation measures to prevent them from suffering premature corrosion.

27.     Gentry relied upon the Simpson Territory Manager's representations that the HD Straps and MAS were properly specified, installed, and maintained, and would have taken mitigation measures to prevent premature corrosion had Simpson disclosed its knowledge and internal recommendations.

28.     On March 7, 2011 Simpson circulated a letter to customers in Hawaii, including Gentry, stating that it had "become aware of problems regarding concrete spalling and corrosion of embedded products around the perimeter of some homes in Oahu, Hawaii." Simpson negligently misrepresented that "there does not appear to be any defect in the design or manufacturing of such products."

29.     On July 30, 2011, a Class Action lawsuit, *Thomas Nishimura, Collette Nishimura, individually and on Behalf of a Class of All Persons Similarly Situated v. Gentry Homes, Ltd., a Hawaii Domestic profit Corporation; Simpson Manufacturing Co., Inc. a Delaware Corporation; Simpson Strong-Tie Company, Inc., a California Corporation, et al.*, Civil No. 11-1-1522-07 RAN,  in the Circuit Court of the First Circuit, State of Hawai'i (the "Class Action Lawsuit") was filed on behalf of:

> All individuals or entities who own homes that were designed, developed and built by [Gentry] that have inadequate high-wind protection and included non corrosion-resistant and/or otherwise defective high wind protection materials made and sold by [Simpson].

30.     The Class Action Lawsuit alleged that "Simpson's products are defective and have corroded and failed," that Simpson sold "defective straps throughout Hawaii" and was "well aware of its misconduct."

31.     At the time the Class Action Lawsuit was filed, Gentry was unaware of any widespread corrosion of the HD Straps and MAS in the Subject Homes and, in reliance on Simpson's representations, did not believe that such corrosion could exist.

32.     Gentry and Simpson thereafter agreed to toll any and all statutes of limitations and/or repose of any kind whatsoever, arising out of, relating to, or pertaining in any manner to the claims asserted in the Class Action Lawsuit.

33. By Order dated October 8, 2015 a Class was certified in the Class Action Lawsuit consisting of the Subject Homes. The Class Action Lawsuit was subsequently referred to arbitration for decision on the merits.

34. During the course of discovery in the Class Action Lawsuit, destructive testing of 45 randomly selected Subject Homes was conducted. Siding was removed from each home, and concrete was chipped out to expose embedded portions of the HD Straps and MAS.

35. The destructive testing of the 45 randomly selected homes revealed that Simpson's HD Straps and MAS were corroding, prematurely failing, and not performing in accordance with the representations and warranties made by Simpson. In addition to the products failing, this corrosion resulted in cracking, spalling, and other damage to the concrete foundations of the selected Subject Homes.

36. Based on comprehensive analysis of the HD Straps and MAS in the Subject Homes, experts for both the Class and Gentry determined that the Simpson products were "inherently flawed" and "have a number of corrosion-related design flaws." They found that "these conditions that promote corrosion are not related to improper installation practices and in fact were conditions known and approved by Simpson."

37.     After extensive litigation, on September 7, 2017, Gentry and the Class executed a Settlement and Release Agreement fully and finally resolving the claims in the Class Action Lawsuit.

38.     Under the terms of the Settlement and Release Agreement, Gentry agreed to fund a Hurricane Straps Repair Program through which each Subject Home would have its HD Straps and MAS replaced.

39.     As a proximate result of the defective design, misrepresentations, and breaches of warranty by Simpson, Gentry has been damaged in an amount to be proven at trial.

<u>COUNT I</u>
(Breach of Warranty Under Hawaii Revised Statute § 490:2-313)

40.     Gentry repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 39 of the Complaint.

41.     At all times relevant thereto, Simpson was a merchant engaged in the engineering, manufacture, marketing, distribution, and sale of HD Straps and MAS that were incorporated into the Subject Homes.

42.     Simpson made certain warranties, promises, and/or representations concerning the HD Straps and MAS including, but not limited to, express warranties that the products were free from defects in material or manufacturing, and for adequacy of design.

43.     Gentry was a beneficiary of such warranties who was reasonably expected to use, consume, or be affected by the HD Straps and MAS, and who was injured by Simpson's breach of warranties in accordance with H.R.S. § 490:2-318.

44.     As a result of Simpson's breach of warranties, Simpson is liable to Gentry in an amount to be proven at trial.

## COUNT II
(Negligent Misrepresentation)

45.     Gentry repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

46.     At all times relevant, Simpson, in the design, engineering, manufacture, marketing, promotion, sale, and distribution of its product, owed a duty of care and caution to Gentry to provide accurate information.

47.     Simpson negligently misrepresented to Gentry the installation means, methods, and suitability of its products for the Subject Homes, and repeatedly made such misrepresentations in or around the same times as the following:

a.      Simpson's failure to disclose the 2003 Memo memorializing the presentation by Simpson's own corrosion engineer in which the engineer noted that chloride and oxygen were attacking Simpson products

12

embedded in concrete foundations, and recommending that that installers increase concrete cover on the products, increase the density of the concrete in which the products were embedded, or increase the coating over the concrete.

b.  Simpson's April 2005 discovery that HD Straps were "rusting through the concrete" consistent with the concerns raised in the 2003 Memo, under virtually identical construction and installation means and methods at the neighboring Ocean Pointe development, and its failure to disclose such problems to Gentry.

c.  Simpson's July 28, 2006 workshop during which Simpson misrepresented to attendees that problems with Simpson's products resulted from mis-installations, and failed to disclose its knowledge of design defects in its HD Straps and MAS.

d.  Simpson's failure to disclose its Senior Territory Manager's recommendation, on April 14, 2007 that "we might want to change the way we anchor our homes in Hawaii," after informing his superiors that there was a

home in Mililani experiencing significant corrosion of HD Straps.

48.     Throughout this period, Gentry relied upon Simpson's Senior Territory Manager's representations that the HD Straps and MAS were properly specified, installed, and maintained, and would have taken mitigation measures to prevent premature corrosion had Simpson disclosed its knowledge.

49.      As a result of Simpson's negligent misrepresentations and failures to disclose, Gentry has been damaged in an amount to be proven at trial.

WHEREFORE, Gentry respectfully requests judgment in its favor and relief against Simpson as follows:

A.     For general, special, and consequential damages from Simpson in an amount to be proven at trial; and

B.     For pre-judgment and post-judgment interest, attorneys' fees and costs, and such other relief as this Court deems just and proper.

DATED:  Honolulu, Hawaii, November 20, 2017.


/s/ Ryan H. Engle
RYAN H. ENGLE
SARAH M. LOVE
JASON W. JUTZ

Attorneys for Plaintiff
GENTRY HOMES, LTD.